1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Counsel listed on the following page.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MICHAEL MONACO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>D.A. DAVIDSON COMPANIES,<br><br>Defendant. | Case No.  5:16-cv-00332-SJO-DTB<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVALOF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint Filed: February 24, 2016<br><br>Trial Date: March 28, 2017<br><br>Date: January 30, 3017<br>Time: 10:00 a.m.<br>Place: Courtroom 10C<br>Before:  Hon. S. James Otero |

1

2

3   STUTHEIT KALIN LLC
    Kyann C. Kalin (SBN 209030)
4   Kyann@stutheitkalin.com
    308 SW First Avenue, Suite 325
5   Portland, OR 97204
    Telephone: (971) 285-7578
6   Facsimile: (503) 715-5670

7   HKM EMPLOYMENT ATTORNEYS LLP
    Donald W. Heyrich *(admitted pro hac vice)*
8   dheyrich@hkm.com
    Rachel M. Emens *(admitted pro hac vice)*
9   remens@hkm.com
    600 Stewart Street, Suite 901
10  Seattle, WA 98101
    Telephone: 206-838-2504
11  Facsimile: 206-260-3055

12  HKM EMPLOYMENT ATTORNEYS
    Mamta Ahluwalia (SBN 245992)
13  mahluwalia@hkm.com
    HKM Employment Attorneys LLP
14  453 S. Spring Street, Suite 1008
    Los Angeles, CA 90013
15  Telephone: 213-259-9950
    Facsimile: 213-477-2391
16

17  Attorneys for Plaintiff
    MICHAEL MONACO
18
    LITTLER MENDELSON, P.C.
19  Benjamin A. Emmert (SBN 212157)
    bemmert@littler.com
20  Karin Cogbill (SBN 244606)
    kcogbill@littler.com
21  50 W. San Fernando, 15th Floor
    San Jose, CA 95113.2303
22  Telephone: (408) 998-4150
    Facsimile: (408) 288-5686
23
    Attorneys for Defendant
24  D.A. DAVIDSON COMPANIES

25

26

27

28
    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND
    AUTHORITIES
    Case No.  5:16-CV-00332-SJO-DTB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

  **PLEASE TAKE NOTICE** that on Monday, January 30, 2017 at 10:00 a.m., in Courtroom 10C on the 10th floor of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California 90012, the Honorable S. James Otero presiding, Plaintiff Michael Monaco, on behalf of himself and all others similarly situated, will, and hereby does, move for this Court to grant final approval of

  1.    The Parties' Settlement Agreement;

  2.    Settlement payments to the Settlement Class Members; and

  3.    The costs and expenses of the Settlement Administrator KCC LLC.

  This Motion is based upon: (1) this Notice of Motion and Joint Motion for Final Approval of Class Action Settlement; (2) the accompanying Memorandum of Points and Authorities in Support of the Joint Motion; (3) the Declaration of Kyann C. Kalin; (4) the Settlement Agreement; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting Final Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

/ / /

/ / /

/ / /

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND AUTHORITIES
Case No.  5:16-CV-00332-SJO-DTB

1

2

3      This joint motion is made following the conference of counsel pursuant to L.R.

4  7-3 which took place on December 29, 2016.

5

6  DATED: December 30, 2016.

7                                        STUTHEIT KALIN LLC

8

9                                  By:  /s/ Kyann C. Kalin
10                                         Kyann C. Kalin

11                                  Attorneys for Plaintiff
12                                  Michael Monaco, on behalf of himself
                                    and all others similarly situated
13
                                        LITTLER MENDELSON P.C.
14

15

16                                  By:  /s/ Benjamin A. Emmert
17                                         Benjamin A. Emmert

18
                                    Attorneys for Defendant D.A. Davidson
19                                  Companies

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................... 1

II.     FACTS AND PROCEDURE ............................................................... 2

        A.      Overview of the Litigation ...................................................... 2

        B.      Plaintiff's Investigation and Discovery .................................. 4

        C.      The Parties' Arms'-Length Settlement Negotiations ............... 5

        D.      The Proposed Class Action Settlement .................................. 5

                1.      The Settlement Class ................................................... 5

                2.      Settlement Benefits .................................................... 5

                3.      Release of Claims ...................................................... 6

                4.      Attorneys' Fees, Litigation Expenses, and Service
                        Awards ....................................................................... 7

        E.      The Parties' Compliance With the Court's Preliminary
                Approval Order ...................................................................... 7

III.    ARGUMENT ................................................................................... 8

        A.      The Court Should Grant Final Approval of the Class
                Settlement .............................................................................. 8

                1.      The Final Approval Standard Has Been Met .................. 8

                2.      The Settlement Is Reasonable Considering the Strengths
                        and Weaknesses of Plaintiff's Case. .......................... 9

                3.      Given the Risks of Proceeding in Litigation, Including
                        the Risk of Decertification, Settlement is the Most
                        Favorable Outcome. ................................................... 12

                4.      The Settlement Amount Supports Approval. ................ 13

                5.      The Settlement Was Finalized After Sufficient
                        Investigation. ........................................................... 15

                6.      Experienced Counsel's Opinions Should Be Afforded
                        Substantial Consideration. ........................................ 16

7.      Class Members Have Responded Favorably to the Settlement ........................................................................ 17

B.      The Claims Administrator's Costs Should Be Approved ............. 18

IV.     CONCLUSION .......................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)............. 20

*Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014
   WL 439006 (C.D. Cal. Jan. 30, 2014) ....................................... 17, 19

*Fisher v. Enter. Holdings, Inc., et al.*, No. 4:15-CV-00372 AGF,
   2016 WL 4665899 (E.D. Mo. Sept. 7, 2016) ................................ 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................... 9, 19, 20

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)............. 16

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007)............. 20

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)............................... 18

*In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007
   WL 4171201 (N.D. Cal. Nov. 26, 2007)....................................... 14

*In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal.
   2014) ........................................................................ passim

*Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS
   24762 (N.D. Cal. Mar. 17, 2010) ............................................ 14

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)................... 15

*Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371 (3d Cir. 2012)........................... 11

*Nat'l Rural Telecom. Coop.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................. 10, 19

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.
   1982) ...................................................................... 10, 15

*Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC, Dkt. No.
   17 (N.D. Cal. Mar. 25 2015) ................................................ 12, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948(9th Cir. 2009) ........................ 9, 20

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).......................................... 11

*Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010)............... 11

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......................................... 10, 13

*Syed v. M-I LLC*, No. 1:14-742-WBS, 2014 WL 5426862 (E.D. Cal.
    Oct. 22, 2014)........................................................................................ 12, 13, 14

*Torres v. Pet Extreme,* No. 1:13-CV-01778-LJO, 2015 WL 224752
    (E.D. Cal. Jan. 15, 2015 .......................................................................... 16, 17

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal.
    2010) .................................................................................................................. 14

*Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565 (9th Cir. 2008)................ 11

**Statutes**

15 U.S.C. § 1681n(1)(A) ......................................................................................... 15

15 U.S.C. § 1681n(a)(1)(A)..................................................................................... 17

15 U.S.C. §1681b(b)(2) ........................................................................................... 13

15 U.S.C. §1781n(a)(1)(A) ..................................................................................... 16

Cal. Civ. Code § 1785.31 ........................................................................................ 15

Cal. Civ. Code § 1785.50(a)(1)-(2) .................................................................. 15, 16

Fed. R. Civ. P. 23(e)(1)(A) ....................................................................................... 8

Fed. R. Civ. P. 23(e)(2).............................................................................................. 8

**Other Authorities**

Manual for Complex Litigation § 21.632 (4th ed. 2004) ..................................... 8

1

2

## I.     INTRODUCTION

3

After this Court granted preliminary approval the settlement agreement

4

reached by Plaintiff Michael Monaco and Defendant D.A. Davidson Companies

5

("D.A. Davidson"), the parties worked in conjunction with Settlement

6

Administrator Kurtzman Carson Consultants ("KCC"), whereby providing Court-

7

approved notice to 1,480 class members.  To date there have been seven total opt-

8

out requests and no objections.

9

The parties now seek final approval of their settlement agreement.  Under the

10

parties' agreement, D.A. Davidson will establish a $145,000 non-reversionary

11

settlement fund ("Settlement Fund") to resolve Plaintiff's class claims that D.A.

12

Davidson violated federal and state laws regarding background checks, including

13

the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.; the California Consumer

14

Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.1 *et seq*.;

15

California Investigative Consumer Reporting Agencies Act ("ICRAA"), California

16

Civil Code § 1786 *et seq*. as well as California unfair practices law under California

17

Business and Professions Code § 17200 *et seq*.[1]  Settlement Class Members need

18

not take any further action to receive a check; rather, payment from the Settlement

19

Fund will be automatic and without the need of a claims process. Any uncashed or

20

returned checks from distribution will go to a *cy pres* designee, namely, United

21

Way of Montana.  In exchange for these benefits, Settlement Class Members will

22

release their FCRA and California state law claims related to the allegedly

23

offending Authorization forms.

24

25

26

[1] Plaintiff also has an individual claim under the Washington Fair Credit
Reporting Act, Wash. Rev. Code. § 19.182.020(c).

27

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND
AUTHORITIES - 1

28

Case No.  5:16-CV-00332-SJO-DTB

The parties' settlement is fair, reasonable, and adequate.  Plaintiff diligently prosecuted his claims for several months on behalf of the class, during which time his counsel investigated his claims and D.A. Davidson's defenses.  As part of the investigation, Plaintiff's counsel, among other things, culled through various background check forms that D.A. Davidson used to conduct background checks for over 1,483 applicants and/or employees.  Plaintiff's counsel also analyzed the case law on the FCRA, including whether D.A. Davidson "willfully failed to comply" with the FCRA's requirements.  *See* 15 U.S.C. § 1681n(a). In order to evaluate the uncertainties of Plaintiff's case, Plaintiff's counsel reviewed the United States Supreme Court's highly anticipated ruling in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

After weighing the strengths, weaknesses, and uncertainties of his case, Plaintiff engaged in arms'-length negotiations with D.A. Davidson, reaching a reasonable and fair agreement following negotiations during and after a mediation before Martin Quinn.  Now, in light of only a tiny fraction of the class members' decisions to be excluded from the settlement, the parties request that the Court grant their Motion for Final Approval of Class Action Settlement and also retain its jurisdiction to enforce the Settlement. By separate motion, Plaintiff seeks approval of his Class Award and his reasonable attorneys' fees.

## II.    FACTS AND PROCEDURE

### A. Overview of the Litigation

In September 2015, Plaintiff Michael Monaco, a resident of Colton, California at the time, applied for an IT Application Specialist position with D.A. Davidson at the company's Seattle, Washington location. As part of his application

process, Mr. Monaco was provided with D.A. Davidson's "Authorization for Employer Access to Consumer Reports" ("Authorization") so that the company could run a background check on him.  The Authorization Mr. Monaco signed contains four subheadings: "Disclosure," "Authorization," "Release," and "Acknowledgment of Receipt of Summary of Rights."  (Dkt. 29, ¶ 6, Exhibit A.)

In his Complaint, Plaintiff alleged that D.A. Davidson's form violated the FCRA and other state laws. (Dkt. 1.)  FCRA established that there are certain disclosure requirements for credit reports to be used for employment purposes, such as that the disclosure must be in writing, "clear and conspicuous," and "consist[] solely of the disclosure." 15 U.S.C. § 1681(b)(2)(A).  Plaintiff alleged that D.A. Davidson's disclosure was legally defective in that it is not in a stand-alone document and included a waiver of his rights, which would constitute extraneous information, and therefore is unlawful under FCRA.

Plaintiff also alleged violations of California's Credit Reporting Agencies Act ("CCRAA").  The CCRAA requires a notice informing the person that a report will be used, the notice must identify specific provisions of the California Labor Code, inform the person of the source of the report, and offer a checkbox in order to offer a copy of the report to the potential employee. *See* Cal. Civ. Code § 1785.20.5(a).  Plaintiff alleged that the Authorization provided him by D.A. Davidson omitted the Labor Code reference and the specific provisions, the source of the report, and the checkbox, and that these deficiencies violated the CCRAA.

Plaintiff additionally alleged violations of the Investigative Consumer Reporting Agencies Act ("ICRRA").  Like the CCRAA, the ICRAA requires certain information to be included in a disclosure, such as the identifying information for the reporting agency, a summary of the provisions from California

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND AUTHORITIES - 3
Case No.  5:16-CV-00332-SJO-DTB

1
2
3          Civil Code Section 1786.22, and website of the agency.  The Authorization that
4          D.A. Davidson had Plaintiff sign did not include the name, address, and telephone
5          number of the investigative consumer reporting agency, did not provide a summary
6          of the provisions from California Civil Code Section 1786.22, and did not list the
7          Internet website address for the consumer reporting agency.  Plaintiff alleged that
8          these omissions constituted violations of California Civil Code Sections
9          1786.16(a)(2)(B)(iv)-(vi).
10                  Plaintiff also alleged that Defendant violated the California Business and
11         Professions Code § 17200 *et seq.* by engaging in unlawful and unfair business acts
12         and practices.
13                  Finally, Plaintiff alleged on an individual, rather than class-wide, basis that
14         Defendant violated the Washington Fair Credit Reporting Act, Wash. Rev. Code. §
15         19.182.020(c), when it procured Plaintiff's consumer report although a credit report
16         was not "substantially job related" to the IT position for which he applied.

17         **B.  Plaintiff's Investigation and Discovery**

18                  Prior to filing of this action, Plaintiff thoroughly investigated his claims.
19         Plaintiff also has conducted investigation and discovery after filing the action in
20         order to prove up his claims and rebut D.A. Davidson's defenses. As part of the
21         investigation, Plaintiff's counsel reviewed documents produced by D.A. Davidson.
22         (Dkt. 29, ¶ 4). Because this case largely turns on D.A. Davidson's legal defense that
23         Settlement Class Members suffered no "actual injury" and that D.A. Davidson's
24         noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel
25         reviewed and analyzed case law governing FCRA and analogous state law class
26         actions, as well as articles and commentaries.  This analysis and investigation
27
28         MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND
           AUTHORITIES - 4
           Case No.  5:16-CV-00332-SJO-DTB

1

2

3  allowed Plaintiff's counsel to structure a settlement that provides benefits directly

4  to the persons who were forced to sign allegedly defective forms.

5  **C. The Parties' Arms'-Length Settlement Negotiations**

6

7  The proposed Settlement was reached after the parties engaged in a thorough

8  analysis of the pertinent facts and law at issue. On July 29, 2016, the parties

9  attended mediation in San Francisco conducted by the Martin Quinn of JAMS.

10 (Dkt. 29, ¶ 5.)

11 At the mediation, with the assistance of Mr. Quinn, the parties were able to

12 reach an agreement on all material terms of the proposed Settlement. The parties

13 final Joint Stipulation of Class Action Settlement ("Settlement Agreement") was

14 submitted with their Motion for the Preliminary Approval. (Dkt. 29, ¶ 7, Ex. B.)

15 **D.   The Proposed Class Action Settlement**

16 **1.  The Settlement Class**

17 The Settlement Class consists of all persons who, between February 24, 2013

18 to July 29, 2016, executed the Authorization and do not opt-out of the settlement.

19 (Settlement Agreement ¶ 19.)

20 **2.  Settlement Benefits**

21 Under the Settlement, D.A. Davidson agrees to pay $145,000 into a non-

22 reversionary settlement fund ("Settlement Fund") from which all payments will be

23 drawn. (Settlement ¶ 34.) All Settlement Class Members who do not submit valid

24 and timely Requests for Exclusion will receive a settlement payment, in the form of

25 a check, without having to submit a claim. (*Id*. ¶ 28.) Each Settlement Class

26 Member will receive a pro rata share from the Net Settlement Fund (the Settlement

27

28 MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND
AUTHORITIES - 5
Case No.  5:16-CV-00332-SJO-DTB

Fund less costs for settlement administration, attorneys' fees and costs, and incentive payments). (*Id*. ¶ 39 – 41.) Any remaining amount left after from the Net Settlement Fund, including the amount of any uncashed settlement checks, will go to the *cy pres* designee, United Way of Montana. (*Id*. ¶ 45.)

### 3.  Release of Claims

In exchange for benefits provided by the Settlement, Settlement Class Members who have not timely and properly opted out of the settlement will release claims limited to those arising out of or relating to the improper disclosures alleged or asserted in Plaintiff's Complaint. Settlement Class Members will fully release and discharge D.A. Davidson and the Released Parties from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the Lawsuit during the Class period, including those claims related to alleged or potential violations of the FCRA, CCRRA, and ICRAA.  (Settlement ¶ 48-49.)  Settlement Class Members also will expressly acknowledge and agree that they have settled all claims against the Released Parties by and through this Settlement and that they shall not seek any new, different, further, or additional compensation directly or indirectly from D.A. Davidson for any alleged failure by D.A. Davidson to comply with any federal, state, or local law, regulation, or ordinance regarding any matters alleged in the Lawsuit. (*Id*.) This release is appropriately tailored to the allegations asserted by Plaintiff in his Complaint.

All Settlement Class Members who do not opt out will receive a check without needing to submit a claim form. (Settlement ¶ 28.)

### 4.  Attorneys' Fees, Litigation Expenses, and Service Awards

Plaintiff seeks via a separate Motion an order from the Court for Class Counsel to be awarded their reasonable attorneys' fees incurred in this Action in an amount not to exceed one-third of the Gross Settlement Fund, and for a reimbursement of out-of-pocket costs. Plaintiff also seeks, via that same Motion, an Order from the Court granting an award of Five Thousand Dollars ($5,000) to Plaintiff Michael Monaco as consideration for his service as a Named Plaintiff and as consideration for the general release he is giving D.A. Davidson. (Settlement ¶ 46-47.)

### E. The Parties' Compliance With the Court's Preliminary Approval Order

As authorized by the Court's Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. 35), the Parties engaged the services of a Settlement Administrator, KCC, to (1) print and mail out the Court-approved Notice to the class members; (2) remail the Notice on any that were returned as undeliverable; (3) perform a NCOA check and a skip-trace for returned mail; (4); provide a Declaration of Due Diligence; (5) collect, review, and report to the Parties' counsel opt-out and exclusion requests; and (6) answer questions of class members. (Declaration of Beth Verdekal on Behalf of Claims Administrator Re Notice Procedure ("Verdekal Decl."), ¶¶6-11.)

Pursuant to the preliminary approval order, KCC was provided with the Court-approved Class Notice form, which summarized the key terms of the Settlement Agreement, provided information about the Settlement Amount, and advised class members how to object to, or opt out from, the Settlement (Verdekal Decl., ¶8, Ex. A.)   On November 3, 2016, KCC mailed the Notice to the Class Members, and for those with no forwarding address, KCC performed a NCOA check and skip-traced

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the returned mail within five business days.  (*Id.* at ¶¶8-9.)   By the December 18, 2016 opt-out deadline, only seven Class Members (less than 0.5%) had opted out and no Class Members had objected to the Settlement.[2]  (*Id.* at ¶10.)

### III.   ARGUMENT

**A. The Court Should Grant Final Approval of the Class Settlement**

**1.  The Final Approval Standard Has Been Met**

A class action settlement must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). The Court approves a class in three steps: (1) preliminary approval of the proposed settlement, and if the class has not already been certified, conditional certification of the class for settlement purposes; (2) notice to the class providing class members an opportunity to object to, or exclude themselves from, the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

The first two steps have been accomplished; the Court granted preliminary approval of the class action settlement on October 13, 2016 (Dkt. 35) and the Class Members have been notified of Settlement and the upcoming fairness hearing. (*See* Verdekal Decl.)  A court will approve a class action settlement at the fairness hearing stage after allowing Class Members the opportunity to be heard at that hearing, and after determining that the settlement is "fair, adequate, and reasonable."  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

---

[2] Class Members have until January 15, 2017 to object (Verdekal Decl., ¶11), but this motion required filing prior to that date.  Therefore, prior to the hearing on January 30, the parties will file with the Court updated numbers, if any.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND AUTHORITIES - 8
Case No.  5:16-CV-00332-SJO-DTB

A court's determination as to whether to approve the proposed settlement is left to the sound discretion of the trial judge, and will not be overturned without a finding of clear abuse of discretion. *Id.* at 1026-27.  Proper deference must be given to the private, agreed-upon decision of the parties. *Id.* at 1027.

The Ninth Circuit additionally has set forth a list of nonexclusive factors for a district court to consider when granting final approval, which are "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 617 (9th Cir. 2010)).

As discussed below, when weighing these factors, the parties' Settlement is fair, adequate, and reasonable for the Class Members.

### 2. The Settlement Is Reasonable Considering the Strengths and Weaknesses of Plaintiff's Case.

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecom. Coop.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004) (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew Bender 3d. ed.). When assessing the strength of a plaintiff's case and his probability of success, "the district court's determination is nothing more than an amalgam of delicate

1

2

3   balancing, gross approximations, and rough justice." *Officers for Justice v. Civil*

4   *Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).

5       The first significant hurdle Plaintiff would face in this case is establishing

6   standing to pursue his claims.  In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016),

7   the Supreme Court reaffirmed that "Article III standing requires a concrete injury

8   even in the context of a statutory violation," and therefore "[plaintiff] could not, for

9   example, allege a bare procedural violation, divorced from any concrete harm, and

10  satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S.Ct. at 1549

11  (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). The Court further

12  clarified that even though the FCRA is intended is to protect against inaccurate

13  credit reporting, "[a] violation of one of the FCRA's procedural requirements may

14  result in no harm." *Id.* at 1550.

15      Although the breadth of *Spokeo* will continue to be debated there is no

16  question that Plaintiff is, at a minimum, at some risk of having his case dismissed at

17  the pleading stage. *See, e.g., Fisher v Enter. Holdings, Inc., et al.*, No.

18  4:15CV00372 AGF, 2016 WL 4665899, at *4 (E.D. Mo. Sept. 7, 2016) ("[A]ll

19  Plaintiff alleges is that the format and conspicuousness of a disclosure did not

20  comply with [FCRA]. The Court believes that under these circumstances, the

21  statutory violation alleged by Plaintiff does not establish her standing to bring this

22  action.").

23      In addition, although there is no dispute that D.A. Davidson used forms that

24  included both the disclosure form and a release of liability on one document, the

25  case law is still unsettled when it comes to finding willfulness in a defendant's

26  actions in these circumstances.  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-

27  59 (2007), the United States Supreme Court explained that "willful" applies not

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND
AUTHORITIES - 10
Case No.  5:16-CV-00332-SJO-DTB

only to "knowingly" violating the FCRA, but also to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, "reasonable construction," or even "careless construction," were left open as possible defenses, at least as interpreted by circuits outside the Ninth. *See*, *e.g.*, *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803-804 (7th Cir. 2010) (holding that even if defendant did violate the statute it did not do so recklessly or knowingly); *Long v. Tommy Hilfiger U.S.A.*, 671 F.3d 371 (3d Cir. 2012) (holding that defendant's reading of the statute was "careless interpretation" and therefore not a "willful" violation).

Defendant's ability to raise issues with standing and the possible defenses to willfulness, coupled with Plaintiff's burden to show that D.A. Davidson acted with "reckless disregard of statutory duty," create potential challenges for Plaintiff to prove ultimate liability.  Thus, settlement is the favored outcome. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) (order granting plaintiffs' motion for final approval of class action settlement and granting motion for incentive awards) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue).

Another legal issue for Plaintiff in this case is that California district courts have dismissed similar claims brought by FCRA plaintiffs.  *See Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068-VC, Dkt. No. 17 (Order Granting Defendant's Motion to Dismiss [Dkt. No. 13]), *2 (N.D. Cal. Mar. 25, 2015) (finding that inclusion of a liability waiver provision in an FCRA disclosure did not equate to reckless disregard and dismissing claim); *Syed v. M-I LLC*, No. 1:14-742-

WBS, 2014 WL 5426862, *4 (E.D. Cal. Oct. 22, 2014) (memorandum and order re: motion to dismiss) (same).  These courts rejected that facial violations alone could merit liability under the FCRA, holding that a defendant cannot be found to have plausibly acted in reckless disregard of its statutory duty "even if inclusion of the [waiver] in [defendant's] disclosure form did not comply with a strict reading of 15 U.S.C. §1681b(b)(2)'s requirement that the document consists solely of the disclosure and authorization." *Peikoff*, at *2; *see also Syed*, at *4 (finding that defendant's understanding of the FCRA when it included a waiver on its disclosure form was "not objectively unreasonable").  Were this Court to accept the Northern and Eastern District Courts' interpretation of willfulness, Plaintiff and the potential class could face dismissal.

In light of the challenges Plaintiff faces moving forward, settlement is the best and most reasonable outcome.

### 3. Given the Risks of Proceeding in Litigation, Including the Risk of Decertification, Settlement is the Most Favorable Outcome.

Though factually straightforward, there is great uncertainty in the legal landscape that could bar certification, or overturn it.  Regardless of the applicability of *Spokeo,* even if Plaintiff were to prevail in certifying his claims, the court could decide that Plaintiff did not face enough of an "actual injury" to prevail.  *In re Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 451 ("[P]laintiffs faced a substantial risk of incurring the expense of a trial without any recovery, as no one in the class alleged actual damages.") As the *Peikoff* and *Syed* cases demonstrate, claims of technical violations like Plaintiff's face judicial resistance in some courts and end up being dismissed. *See supra* III(A)(2).

1
2
3
4
5
6
7
8
9
10

Defendant likewise risks incurring great expenses if Plaintiff were to prevail. This type of "all-or-nothing prospect weighs in favor of approval." *In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. at 452.  Even assuming Plaintiff were to succeed in certifying the class, however, the "risk that a class action may be decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)), *aff'd*, 696 F.3d 811,826 (9th Cir. 2012).

11
12
13
14
15
16
17
18
19
20

When a Court considers the risks of litigation, it may look to "the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted). Here, the Settlement delivers prompt and assured recovery for all Settlement Class Members and avoids the risks and expenses of years' long litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) (order) (recognizing that the inherent risks of trial and appeal support settlement).

21

**4.  The Settlement Amount Supports Approval.**

22
23
24
25
26
27
28

The Ninth Circuit instructs that "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Rather, "the very essence of a settlement is compromise." *Id.* at 624. Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND AUTHORITIES - 13
Case No.  5:16-CV-00332-SJO-DTB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n. 2 (2nd Cir. 1974)).

Plaintiff's best possible outcome would be for a jury to determine that D.A. Davidson acted willfully when it failed to comply with state and federal laws. With that determination, he and Class Members could be awarded between $100 and $1,000 for each violation. *See* 15 U.S.C. § 1681n(1)(A). Additionally, if the Court did not find that Plaintiff's CCRAA and claim was preempted by FC.RA as a matter of law, Plaintiff and Class Members could be awarded up to any amount the Court might allow. *See* Cal. Civ. Code § 1785.31.  Likewise, if the Court did not find the ICRAA claim preempted, Plaintiff could be awarded actual or statutory damages of $10,000 (whichever is greater).  *See* Cal. Civ. Code § 1785.50(a)(1)-(2).

Although the FCRA provides statutory damages of not less than $100 and not more than $1,000 for a willful violation (15 U.S.C. §1781n(a)(1)(A)), for those class members who could not prove an actual injury, "it is unlikely that the class members would receive maximum statutory damages for the conduct at issue." *Torres v. Pet Extreme,* No. 1:13-CV-01778-LJO, 2015 WL 224752, at *6 (E.D. Cal. Jan. 15, 2015), amended, No. 1:13-CV-01778-LJO, 2015 WL 648241 (E.D. Cal. Feb. 5, 2015). The proposed recovery for Settlement Class Members, consisting of $145,000 in statutory damages is substantial. Although Class Members may recover a similar amount if Plaintiff prevails at trial, they may do so now without the risk of further litigation. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. at 454 (finding that 5% to 30% of the potential $100 recovery under the FCRA is fair and adequate); *see also, In re Mego Financial Corp. Sec.*

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND AUTHORITIES - 14
Case No.  5:16-CV-00332-SJO-DTB

*Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a settlement that paid plaintiffs one-sixth of the potential recovery to be fair and adequate). Moreover, D.A. Davidson also likely will argue that the $10,000 maximum damages available under Cal. Civ. Code § 1785.50(a)(1)-(2) does not apply in a class case, which could eviscerate the largest portion of possible damages available to the Class Members. *See* Cal. Civ. Code § 1785.50(a)(1)-(2). Thus, the substantial risks to Plaintiff in pursing this to trial and appeal necessitates a discount on the settlement recovery.

The Court should approve the proposed settlement because the estimated recovery to Class Members is approximately $45 each, just under half of the $100 minimum statutory damage award provided by the FCRA's willfulness provision (15 U.S.C. § 1681n(a)(1)(A)), and therefore it is superior to other settlements approved by California district courts involving similar claims. *See, e.g., Torres*, 2015 WL 224752, at **6-7 (awarding gift cards of up to $45 depending on the claims rate); *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. at 453 (offering vouchers ranging from $5 to $30). In short, "[g]iven the likelihood that plaintiff[] would have been unable to prove actual damages and the risk that [he] would have been unable to prove willfulness and recover any damages at all, […] the amount of settlement weighs in favor of settlement." *In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. at 454.

### 5. The Settlement Was Finalized After Sufficient Investigation.

A settlement negotiated at an earlier stage in litigation like this one can be approved if a sufficient investigation has been conducted. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014), *appeal dismissed* (Sept. 22, 2014) (finding that despite "discovery

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[being] limited because the parties decided to pursue settlement discussions early on," counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims").

Based on the discovery that Plaintiff's counsel reviewed, and on their independent investigation and evaluation and on the fact that the merits of this case turn largely on unsettled legal issues, and not factual disputes, Plaintiff's counsel believes the terms set forth in the Settlement Agreement are fair, reasonable, and adequate, and in the best interest of the Settlement Class in light of all known facts and circumstances. (Dkt. 29, ¶¶ 8-13). The risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by D.A. Davidson, warrant settlement, even at this earlier stage.

### 6. Experienced Counsel's Opinions Should Be Afforded Substantial Consideration.

Because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation," the Court should give considerable weight to the parties' settlement. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, experienced counsel had their respective clients approve this settlement after a thorough review of relevant documents and information, as well as a rigorous analysis of the parties' legal claims and defenses. The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator, with certain terms re-negotiated after review by this Court.

Plaintiff is represented by experienced class action counsel possessing significant experience in class action matters. (*See* Dkt. 29, ¶¶ 9-13.) Likewise,

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMO OF POINTS AND AUTHORITIES - 16
Case No.  5:16-CV-00332-SJO-DTB

D.A. Davidson's counsel, Littler Mendelson, is one of the preeminent employment litigation firms in the nation. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (giving credit to counsels' experience and views of and a mediator's involvement in approving a settlement).

Based on the satisfaction of the relevant factors (*supra* III(A)(1)), the Court should find the proposed Settlement to be fair and adequate.

### 7. Class Members Have Responded Favorably to the Settlement

In evaluating whether to grant final approval of a settlement, a court may "gauge the reaction of other class members" by evaluating "the number of requests for exclusion, as well as the objections submitted." *In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 455 (C.D. Cal. 2014). To date, of the 1,480 notices mailed out, none have filed and objection and only seven (less than 0.5%) have opted out. (Verdekal Decl. ¶10.)  These small numbers demonstrate that the vast majority of Class Members support the settlement. When, like this one, "the overwhelming majority of the class willingly approved the offer and stayed in the class," this creates some "objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. *See also Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("[T]he absence of a negative reaction [] strongly supports settlement. A total of zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of [329]

members."). "The fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Like the standard for opt-outs, a "lack of objection of the Class Members favors approval of the Settlement." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043, 1049 (N.D. Cal. 2007). Here, since less than 0.5 percent of the class has opted out and no objections have been received, the lack of objection in this case strongly favors approval of the settlement.

## B. The Claims Administrator's Costs Should Be Approved

The parties seek final approval of the settlement administration costs incurred by KCC. KCC acted in accordance with the Settlement Agreement and completed its duties. (*See* Verdekal Decl.). KCC's estimated costs for administering the settlement, including notice and distribution to over 1,400 class members, is $17,700.[3] Accordingly, KCC's reasonable costs should be given final approval along with the remainder of the settlement terms.

/ / /

/ / /

/ / /

---

[3] The parties will submit an updated declaration from KCC with the final costs of administration following the close of the period for objections.

_, 20.

## IV. CONCLUSION

The Parties have negotiated a fair and reasonable settlement on behalf of Class Members. Accordingly, the Parties respectfully request the Court to grant final approval of the Settlement Agreement.


DATED: December 30, 2016      **STUTHEIT KALIN LLC**

                             By: ____/s/Kyann C. Kalin____
                                      Kyann C. Kalin
                             Attorneys for Plaintiff
                             Michael Monaco, on behalf of himself and
                             all others similarly situated


DATED: December 30, 2016.     **LITTLER MENDELSON P.C.**


                             By: ____/s/ Benjamin A. Emmert____
                                      Benjamin A. Emmert


                             Attorneys for Defendant D.A. Davidson
                             Companies